(34 South. 96.)

No. 14,684.

SCHWARTZ et al. v. LAKE.

(March 30, 1903.)

PRESCRIPTION—INTERRUPTION—UNSIGNED CITATION.

1. A citation not signed by the clerk will not interrupt prescription.

2. The syllabus in the case of Flower v. O'Connor, 17 La. 213, criticised.

(Syllabus by the Court.)

Appeal from Judicial District Court, Parish of Caddo; Alfred Dillingham Land, Judge.

Action by Sophie Schwartz and others against John Lake. Judgment for defendant, and plaintiffs appeal. Affirmed.

Sidney Levy Herold and Alexander & Wilkinson, for appellant. Shepherd & Land, for appellee.

PROVOSTY, J. This is a suit to revive a judgment. On exception the first citation served on the defendant was held to be defective. Plaintiff then caused a second citation to be issued and served. Thereupon the defendant pleaded the prescription of 10 years applicable to judgments. Civ. Code, art. 3547. This prescription, like all others, may be interrupted by the citation of the defendant. Civ. Code, arts. 3547, 3518. "A legal interruption takes place," says the latter article, "when the possessor has been cited to appear before a court of justice," etc. This article speaks only of the citation of the possessor, but "the same rule applies to the prescription liberandi causa." White v. McQuillan, 12 La. 530. The 10 years following the judgment sought to be revived expired after the service of the first citation, but before the service of the second. The question is, therefore, whether this first citation was so defective as not to have interrupted the prescription.

There are not two ways of citing a defendant. There is but one way, and it is that provided for by article 179 of the Code of Practice. Among other requisites there laid down for this citation, are those that it shall be issued by and be signed by the clerk. The first citation served upon the defendant, now relied upon for the interruption of the prescription, consisted in a duly certified copy of the petition, accompanied by the following document or paper:

"Mrs. Sophie Schwartz & als. vs. John Lake.

"No. 7,699. In the First Judicial District "Court, Parish of Caddo.

"To John Lake of the Parish of Caddo.

"You are hereby cited to appear in the office of the clerk of said court in the city of Shreveport, parish aforesaid, and comply with the demand contained in the petition of which a copy is hereto annexed, or file your answer thereto in writing, in the office of the said clerk, in ten days after the service hereof, with one additional day for every ten miles, between your residence and the office of the said clerk.

"Witness Honorable A. D. Land, Judge of said Court, this——day of——, A. D. 190-.
——————, Clerk.

"A true copy: Attest—————, Clerk."

This paper bore the seal of the court, but, as may be noticed, was not signed by the clerk, and was not dated. The proof is, however, that those of the blanks in it that were filled were so filled in the handwriting of the clerk, and that it was served in person on the defendant.

Unless a defendant can be cited without a citation, we do not see how it can be contended that the defendant in this case was cited. This unsigned paper was certainly not a citation, and the copy of the petition was not a citation, and the two together were not a citation. A citation is an order from the court to the defendant to appear and answer, and this order can emanate only from the clerk, and only under his signature. It is the clerk's signature that imparts legal life to the document called a "citation." Without the clerk's signature, the document is nothing more than mere writing or print.

Counsel for plaintiff argues, however, and correctly, that this court has made a distinction between citation for the purpose of serving as a basis for judgment, and citation for the purpose of interrupting prescription,

emancipating the latter from the strict compliance with requirements of article 179, Code Prac., exacted in the case of the former. But this court has never held, and could not hold, that prescription can be interrupted by the service of a document such as the one here in question. Let us examine the cases cited by plaintiff's counsel.

In Satterly v. Morgan, 33 La. Ann. 846, the service had been on the attorney in fact, although the citation had been addressed to the defendant himself, and also his residence of the defendant had been erroneously given. The court doubted whether the citation was not good, even as a basis for judgment, but held that it was certainly good for the purpose of interrupting prescription.

In Martinez v. Vives, 30 La. Ann. 918, the sole defect was that the number of days within which to answer had not been specified.

In Blanc v. Dupre, 36 La. Ann. 847, the contention was that the administrator who had brought the suit was without authority to do so, his appointment having been null, and that, therefore, his suit did not have the effect of interrupting the prescription. The decision of the court was, in effect, that the administrator was an officer de facto, and that, therefore, his suit interrupted the prescription. The sufficiency of the citation was not involved.

In Flower v. O'Connor, 17 La. 213, the suit whereof the citation was relied on to interrupt prescription, had been brought on a partnership claim by one of the partners of a dissolved partnership. The point was that the plaintiff had no authority to represent the interest of his former partners, and that, therefore, his suit had not interrupted prescription as to this interest. The court held that it had. The case did not involve the sufficiency of the citation in point of form.

In New Orleans Canal & Banking Company v. Tanner, 26 La. Ann. 273, all that was held was that a citation by a de facto clerk is valid.

In Smith v. Taylor, 10 Rob. 133, the court simply applied the maxim of "contra non valentem agere non currit præscriptio," a principle now no longer recognized. Cox v. Von Ahlefeldt, 105 La. 543, 30 South. 175.

In White v. McQuillan, 12 La. 530, the court held that a citation, otherwise regular, would interrupt prescription, notwithstanding

that the copy of petition served was not certified by the clerk. As we read this decision, it is to the effect that the copy of the petition is not required to be certified.

In Leon v. Bouillet, 21 La. Ann. 651, the objection was that the citation had been in English, although French was the mother tongue of the defendant, and he was entitled to citation in French. This was a mere irregularity, which default would have cured. Same case. But default cannot cure want of signature by the clerk. Anderson v. Joliett, 14 La. Ann. 614.

In Elmore v. Ventress, 24 La. Ann. 382, all that is held is that want of or defect in citation is cured by answering the merits and that the curative power of the answer relates back to the citation.

In Driggs v. Morgan, 10 Rob. 119, a demand by way of reconvention was held to interrupt prescription. Of course it does, since it is the exact equivalent of a regular citation.

In Barrow v. Shields, 13 La. Ann. 57, a regular citation on a premature demand was held to have interrupted the prescription "for the time that the suit lasted after the maturity of the note."

These are all the cases cited by plaintiff's counsel. They may be assumed to be the strongest that can be found in our Reports in support of the sufficiency of this citation, and yet what have we? A case where the court doubted whether the citation was not sufficiently formal, even as a basis for judgment; another case where, as we understand, the court held that the citation was not defective; another, where the defect was such as would be cured by default; another, where the number of days within which to answer had not been specified—a purely technical defect; and, finally, we have several cases which did not turn upon the sufficiency of the citation in point of form, but upon other considerations not here involved. These cases are certainly not precedents for holding that the unsigned paper served on the defendant in this case was a citation—no matter for what purpose.

If the purpose of a citation were merely to bring home to the defendant knowledge of the claim of the plaintiff, perhaps the service of a copy of the petition might suffice. But the purpose is to convey to him the mandate of the court that he pay the debt, and noth-

ing short of a duly authenticated summons moving directly from the court to him can answer the latter purpose. A mere copy of the plaintiff's petition will not do. The petition is the act of the plaintiff; it is not the act of the court.

This court has never intended to say, nor has ever said, that judicial notice of the claim of a plaintiff brought home to a defendant otherwise than by a summons emanating from the court itself as the act of the court—that is to say, by a citation—can interrupt prescription. Any such doctrine would be in the teeth of the Civil Code. What is said by the court arguendo in the case of Flower v. O'Connor, 17 La. 217, must be taken with that qualification. The term "judicially notified," there made use of, must be understood to mean "judicially notified" by means of a citation; for this is the only mode recognized by our law for interrupting prescription judicially. The syllabus of the O'Connor Case has been repeated in other cases—perhaps without sufficient attention to the looseness or vagueness of its language; but this has not had the effect of changing the law in this matter of the interruption of prescription by judicial demand as contained in the Codes and as heretofore applied by this court.

Perhaps it may be as well to admit that in this O'Connor Case the court suffered itself to be misled by the passage from Pothier quoted in the decision. That passage, as appearing in Pothier, reads as follows:

"When the owner of part of an estate has brought suit in revendication for that part which belongs to him against one who is in possession of the whole by virtue of a just title, this suit interrupts the possession and the course of the prescription only for the share of the plaintiff. Inasmuch as the possessor continues to hold the remainder without disturbance, the time of the prescription continues to run in his favor.

"However, if, by having the titles of the plaintiff thus communicated to him, which titles are joint between this plaintiff and his co-owners, the said possessor has been informed of the right of ownership of the said co-owners, this information, which puts an end to the good faith of his possession with regard to the shares of these co-owners who have not yet brought suit, interrupts also

and stops the course of the prescription with regard to the shares of the said co-owners.

"Hence it is that, when subsequently the said co-owners bring suit against this possessor for their shares, if he pleads against them that as to these shares prescription had run in his favor before the filing of suit, they will be justified in replying to him that the prescription has not run in his favor; that it was interrupted by the knowledge which he acquired of their rights of ownership through the first suit brought against him wherein their titles were communicated to him."

A few pages back (De la Prescription, vol. 8, p. 404, No. 34), the great jurist had said:

"Under the Roman law it sufficed that the good faith required for prescription should have characterized the possession at its commencement. The knowledge which the possessor might have afterwards acquired of the thing not being his, did not prevent the prescription from running in his favor.

"In our French law we have departed from the Roman law on this point, and adopted the rule of the canon law, according to which good faith is required for the entire prescriptive period.

"This disposition of the canon law is very equitable. The possessor, by the knowledge which he acquires of the thing not being his, incurs the obligation to give up this thing which in the beginning he had possessed in good faith. This obligation springs from the law of nature, which forbids us to keep as our own property that belongs to another. This obligation, after once it has come into existence, continues to subsist until discharged, and prevents the prescription."

Thus it is seen that in this passage the author was expounding the canon law, which in his time was the law of France in this matter of the interruption of prescription; and that he was not expounding the Roman or civil law. It is seen, also, that between the two systems there exists in the present connection this radical difference: that by the canon law good faith is required for the entire term of the prescription, whereas by the Roman or civil law it is required only for its commencement. It is seen, furthermore, that, as a consequence of this difference, under the one system, knowledge brought home to the possessor touching the infirmity of

his title puts an end to the prescription by putting an end to his good faith; whereas under the other system such knowledge does not interfere with the course of the prescription. Now, the Code Napoleon, art. 2269, and our Code, art. 3479, have adopted the Roman or civil law in this matter. "It is sufficient if the possession has commenced in good faith," says this article 3479. "If the possession should afterwards be held in bad faith, that shall not prevent the prescription."

Arguendo, in this O'Connor Case, the court said:

"It is clear from this doctrine of Pothier that, in order to determine the effect and extent of a legal interruption, we must inquire more particularly into the object and cause of the action than into the right of the plaintiff, the manner in which it is prosecuted, and the competency of the court in which it is instituted, and endeavor to ascertain how far the knowledge of the titles on which the action is founded has been brought home to the defendant by the judicial demand; and we do not hesitate to conclude that, if it be established that the defendant has been judicially notified of the titles which are the foundation of the demand for the whole of the property or of the debt, so as to acquire a sufficient knowledge of the rights which are sought to be enforced against him by a suit, there results from said suit a legal interruption in favor of those to whom such rights may belong."

In framing the syllabus the reporter reproduced this language as representing the doctrine of the case, whereas the real doctrine of the case, the part of the reasons for judgment directly applicable to the facts—it will be remembered that the suit was by a member of a dissolved partnership to recover a debt of the partnership—was the following:

"A sixth exception is where the party who has acted can be taken to have done so not alone in his own interest, but also in that of another, who has tacitly given him the authority."

For this legal proposition the court gives the authority of Troplong, Duranton, and Pardessus, commentators of the Code Napoleon, which, as stated above, has, like our Code, adopted in this matter of the interruption of prescription the Roman doctrine.

Evidently in that part of the argument adopted by the reporter for his syllabus the court had been betrayed by the ordinarily infallible authority of Pothier into using language appropriate to the canon law, where, for interrupting prescription, it suffices to bring a man before the tribunal of his own conscience; but entirely inartistic and inapt, to say the least, in an exposition of the civil law, where, to interrupt the prescription, the tribunal before which the defendant must be brought is that of the civil magistrate. Hence we say that by the expression "judicially notify" the defendant the court must be understood to have meant "judicially notify" him by means of a citation, because no other mode of judicial notification interruptive of prescription is known to our law.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed.