565 So.2d 585 (1990)
James Clyde BROWN, et al.
v.
STATE.
88-656.
Supreme Court of Alabama.
May 11, 1990.
Rehearing Denied June 22, 1990.
William J. Baxley and Joel E. Dillard of Baxley, Dillard & Dauphin, Birmingham, and James Doyle Fuller and George Lamar Beck, Jr., Montgomery, for appellants.
Don Siegelman, Atty. Gen., and Leura J. Garrett, Asst. Atty. Gen., for appellee.
SHORES, Justice.
This action is an outgrowth of this Court's decision in Ex parte Dison, 469 So.2d 662 (Ala.1984), in which we reversed the defendant's conviction for driving under the influence in violation of Code of 1975, § 32-5A-191, because the Uniform Traffic Ticket and Complaint ("UTTC") issued to the defendant had not been verified before a judicial officer and the defendant had raised this issue at the time of trial.[1] We concluded in Dison that this lack of verification of the ticket prevented the district court, and subsequently the circuit court on appeal, from obtaining subject matter jurisdiction, and, thus, that the defendant's *586 conviction was void. 469 So.2d at 665.
Following the Dison decision, James Clyde Brown[2] and Terry P. Duncan[3] filed this class action against the State of Alabama, the City of Montgomery, and others on behalf of themselves and all those who had been convicted of traffic offenses based upon improperly verified UTTC's. Their case was styled a "Petition for Writ of Habeas Corpus or in the Alternative Bill for Declaratory Judgment, Injunctive or Other Relief." They sought to have all improperly verified UTTC convictions expunged from the records and to have all fines and costs paid as a result of the convictions refunded to the plaintiffs.
The Circuit Court of Montgomery County certified the plaintiff and defendant classes on September 5, 1985. The trial judge's order defined the plaintiffs' class as follows:
"All individuals who have been convicted of traffic infractions or other violations wherein the originating complaint was embodied on the Alabama Uniform Traffic Ticket and Complaint as provided by Rule 19 of the Alabama Rules of Judicial Administration which said complaints were not properly verified prior to entry of judgment at the initial trial level, exclusive of convictions rendered in the 10th Judicial Circuit.[4] Inferentially, this class is limited to those people who were convicted on improperly verified complaints subsequent to April 1, 1977, which is the effective date of the adoption of the Uniform Traffic Ticket and Complaint. From the evidence in this case the Court deems it appropriate to further delineate this class into two subclasses. The Court notes that there are certain members of the class whose convictions will show on the face of the record whether the complaints are properly verified, while others of the overall class will require proof outside the record to establish whether the complaint was properly verified. The class is therefore further defined by `Subclass A' and `Subclass B' as follows:
"SUBCLASS A:
"Those members of plaintiff's class who were convicted of various offenses on the Alabama Uniform Traffic Ticket and Complaint which said complaints show on the face thereof that they were not properly verified.
"SUBCLASS B:
"Those members of plaintiff's class who were convicted of various offenses on the Alabama Uniform Traffic Ticket and Complaint which said complaints appear to be properly verified on the face thereof but which can be shown in fact to be improperly verified."
(C.R. 212-13.)
In this same order the trial judge defined the class of defendants as follows:
"All municipal corporations within the State of Alabama which maintain and operate municipal courts hearing traffic infractions based on the Uniform Traffic Ticket and Complaint and which have imposed fines and court costs and other penalties against the members of the Plaintiffs' class as above defined, exclusive of municipalities within the 10th Judicial Circuit."
(C.R. 214.) The trial judge ordered:
"1. That this cause shall be maintained as a class action under Rule 23(b)(1) and (2) of the Alabama Rules of Civil Procedure on behalf of the class comprised of the named Plaintiffs and all other individuals similarly situated as defined above; and

*587 "2. That this class action shall further be maintained against the State of Alabama as an individual Defendant, and against the City of Montgomery individually and as a representative of the class of defendants of municipal corporations as above defined; and
"3. That the judgment in this class action, whether or not favorable to aforesaid Plaintiffs' or Defendants' classes or any members thereof, shall include, and be binding on all class members as hereinbefore described.
"4. The Court further orders that, while under the provisions of the appropriate rules notice to the class is not required, general notice would be appropriate and it is therefore further ordered that said notice in the form attached hereto as Exhibit `A' be published for once a week for three consecutive weeks in the legal notice section of the following newspapers published and circulated within the State of Alabama:
"A. Birmingham News, Birmingham, Alabama;
"B. Huntsville Times, Huntsville, Alabama;
"C. The Anniston Star, Anniston, Alabama;
"D. The Florence Times, Florence, Alabama;
"E. Tuscaloosa News, Tuscaloosa, Alabama;
"F. Montgomery Advertiser-Journal, Montgomery, Alabama;
"G. The Dothan Eagle, Dothan, Alabama;
"H. Mobile Press-Register, Mobile, Alabama;
"I. Montgomery Independent, Montgomery, Alabama;
"the cost of this notice shall be borne by the Plaintiffs in this cause and should Plaintiffs prevail, may be taxed as cost at a later date.
"5. In conjunction with this Court's decision to publish notice of this action, the Court further orders that an individual copy of Exhibit `A' should be sent to all municipalities within the Defendants' class, by certified mail, addressed to the Clerk of such cities. In addition thereto, a copy of the notice attached hereto as Exhibit `B' should also be sent to said municipalities. The Defendants are hereby ordered to forthwith provide to counsel for the Plaintiffs a list of all such municipalities. Upon receipt of such list Plaintiffs' counsel shall mail to the Clerk for each municipality on said list, a copy of the notices attached hereto as Exhibits `A' and `B'. The cost of this mailing shall also be borne by Plaintiffs and, should they ultimately prevail in this cause, may be taxed as costs against the Defendants."
(C.R. 214-16.)
Plaintiffs' counsel subsequently filed a "Notice of Compliance with Publication Order" certifying that he had fully complied with the trial court's order of September 5, 1985, at his expense. (C.R. 270.)
During the pendency of the present case and also as an outgrowth of the Dison decision, a woman who had pleaded guilty twice to driving under the influence in Dothan filed a collateral proceeding to set aside and vacate her convictions and to secure a refund of her fines. Neither of the two UTTC's she had received was sworn to or acknowledged before a judge or magistrate, and this lack of verification was plain on the face of the ticket. City of Dothan v. Holloway, 501 So.2d 1136 (Ala. 1986). In Holloway this Court overruled Dison and held that the lack of verification of the UTTC's would only affect the trial court's ability to obtain jurisdiction over the person and not its ability to obtain jurisdiction of the subject matter. We said:
"Therefore, the fact that the ticket in the Dison case was not verified would not affect the district court's jurisdiction of the subject matter. Instead, the lack of verification would more directly affect the question of whether the court had obtained personal jurisdiction of the defendant."
501 So.2d at 1137.
"In overruling the Dison opinion, we are simply holding that if the UTTC is not verified and the defendant does not object *588 to this defect, before trial, then the objection to the court's personal jurisdiction of the defendant has been waived."
501 So.2d at 1139.
"By coming to this resolution of the issue, we necessarily hold that those persons who were convicted of traffic infractions pursuant to an unverified UTTC and who did not object to that defect at the appropriate time, are not entitled to have their convictions vacated or the fines they paid refunded."
Id.
On December 30, 1985, the trial court entered a summary judgment in favor of the plaintiffs as to Subclass A only, and certified that summary judgment as final, pursuant to Rule 54(b), A.R.Civ.P. The trial court found a genuine issue of material fact as to Subclass B and denied summary judgment as to it. This Court, on the authority of Holloway, reversed the judgment of the circuit court as to Subclass A[5] and remanded the cause in State v. Brown "Brown I"), 514 So.2d 836 (Ala. 1987), cert. denied, 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988).
The defendants filed a motion on May 12, 1988, to dismiss plaintiffs' claims as to Subclass B, those whose UTTC's appeared on their face to be properly verified. The trial court dismissed all of plaintiffs' claims on the basis of the authority of Brown I, and made the order final pursuant to Rule 54(b), A.R.Civ.P. The plaintiffs appeal.[6]
We must determine whether the trial court erred in dismissing the claims against the State of Alabama made by the members of Subclass B who had been convicted of traffic offenses pursuant to UTTC's that indicated a proper verification on the face of the tickets, but which were in fact not verified. This Court's reversal of Brown I, supra, did not mandate dismissal of the complaint as to Subclass B, as it dealt only with Subclass A.
The facts in Dison, Holloway, and Brown I are distinguishable from those in this case. In each of those cases the UTTC's that were issued to the defendants were invalid on their face. Dison raised the issue of verification at the time of trial; Ms. Holloway did not raise the issue of verification and pleaded guilty as charged. We held that by submitting to the personal jurisdiction of the court and by failing to raise the issue at the time of trial, Ms. Holloway had waived the defect in the verification. Clearly, the holding in Holloway was based upon the fact that the UTTC's in question were defective on their face.
In this class action the UTTC's issued appeared on the face to be verified, but were in fact unverified due to the procedures followed by those charged with the responsibility of processing cases tried on the UTTC. The clerk of the District Court of Montgomery County testified that the officers who issued the UTTC's never appeared before her and never swore on oath to the charge, although her signature was affixed by a rubber stamp to the ticket, indicating that the officer had sworn before her to the charge, when in fact he had not. (R-41-42.) Thus, the ticket appeared to be properly verified, when in fact it was not. The clerk changed this procedure after the Dison holding.
Plaintiffs contend that the clerk of the Montgomery County District Court allowed the clerk's office personnel to "fraudulently" acknowledge UTTC's by using a rubber stamp to affix the signature of the clerk to the ticket. Plaintiffs argue that this constituted a fraud in the procurement of the judgment and violates this Court's holding in Cherry v. State, 491 So.2d 1003 (Ala. 1986), cert. denied, 479 U.S. 861, 107 S.Ct. 210, 93 L.Ed.2d 139 (1986). Basically, *589 plaintiffs claim that because there appeared to be a proper signature on the ticket, there was no notice of a defect. They argue that "[s]ubject matter jurisdiction was never obtained by the District Court of Montgomery County, Alabama," and that "[a] fraud apparent neither to the district court nor the members of Sub-Class B prevented each member of this sub-class from having an opportunity to consider waiving the jurisdiction defect...." We cannot say that the use of a rubber stamp by clerk's office personnel to affix the signature of the court clerk to UTTC's, at the direction of and with the approval of the clerk, amounted to a fraud in the procurement of the judgment against Brown and other defendants similarly situated; however, we cannot say that the defect we are dealing with in this casea lack of verificationwas one that could be waived.
The defect in the procedure that we are dealing with in this case is not the stamping of the clerk's name by one authorized to do so. The defect is in putting a citizen to trial on a criminal charge, albeit a misdemeanor, when no one has sworn on oath, before an officer authorized to administer an oath, that the citizen has committed an offense. This is the minimum required under the criminal justice system in order to require a citizen to defend himself against a criminal charge.
In our system there are but three ways to initiate a criminal prosecution: by indictment by a grand jury, by a complaint on oath before a magistrate or other official, or on an authorized information:
"Jurisdiction of the offense and of the person must concur to authorize a court of competent jurisdiction to proceed to final judgment in a criminal prosecution. This to the end, a formal accusation sufficient to apprise the defendant of the nature and cause of the accusation is a prerequisite to jurisdiction of the offense. Irregularities in obtaining jurisdiction of the person may be waived, but a formal accusation, by indictment, or authorized information, or complaint supported by oath, is essential to complete jurisdiction and cannot be waived."
Kyser v. State, 22 Ala.App. 431, 432, 117 So. 157, 158 (1928). See also Temporary Rule 15.1, A.R.Crim.P.
The Alabama Legislature has, through a variety of statutes, dispensed with grand juries in misdemeanor cases and has authorized prosecution of such cases by information, complaint, or UTTC before a district court. See Ala. Const. (1901), Art. VI, as amended by Amendment No. 328, 6.05 (1973). Section 12-12-53, Ala.Code 1975, provides for the use of the UTTC:
"§ 12-12-53. Requirement of use of uniform traffic ticket and complaint.
"(a) Every law enforcement agency in the state shall use traffic citations of the form known as the uniform traffic ticket and complaint, which shall be substantially uniform throughout the state and which shall be issued in books with citations in no less than quadruplicate.
"(b) The uniform traffic ticket and complaint shall be used in traffic cases where a complaint is made by a law enforcement officer or by any other person or an information is filed by the district attorney." (Emphasis added.)
Our Rules of Criminal Procedure define both "complaint" and "information" as being written statements made under oath. Temporary Rule 15.1(b) and (c), A.R. Crim.P. The UTTC form provides for verification of the signature of the arresting officer, because the Rules of Criminal Procedure require it. "An information is a written statement charging the defendant or defendants named therein with the commission of an indictable offense, made on oath, signed, and presented to the court by the district attorney without action by the grand jury." Temporary Rule 15.1(b), A.R. Crim.P. "A complaint is a written statement made upon oath before a judge or other official authorized by law to issue warrants of arrest, setting forth essential facts constituting an offense and alleging that the defendant committed the offense." Temporary Rule 15.1(c), A.R.Crim.P.
The Alabama Rules of Judicial Administration provide further safeguards in criminal *590 procedure. Rule 19(A)(2) provides: "The uniform traffic ticket and complaint shall be used in all traffic cases in all courts of the state. Any ticket properly issued by a law enforcement officer shall be accepted for filing and disposition in any court having jurisdiction over the alleged offense." In order to constitute a complaint upon which a prosecution can take place, a UTTC must be verified.
The members of plaintiff class were put to trial on, or pleaded guilty to, charges to which no person had sworn on oath before a judge or other official. They cannot be said to have waived the defect, because it was not apparent on the face of the UTTC that it was defective. However, their attack on the judgments is a collateral one, coming many years after the judgments were entered. They now seek to have the judgments vacated and the fines refunded. They cannot prevail on these claims. See, Cobbs v. Norville, 227 Ala. 621 at 623, 151 So. 576 at 577 (1933); Carlton v. Owens, 443 So.2d 1227 at 1231 (Ala. 1983). They have not produced any evidence of fraud or corruption on the part of any state, county, or municipal officer. The practice of certifying that the officer issuing the UTTC had sworn to the charge when this was not the fact is reprehensible, but there appears to be no reason for it except ingorance of what the law requires. Those responsible for educating the people as to what is required to prosecute citizens of this State on the UTTC bear the burden for this.
A similar situation was considered in a class action brought by those persons fined by Alabama justices of the peace for traffic violations. The Callahan[7] class action was filed on the grounds that justices of the peace could not constitutionally try traffic cases under a state statutory scheme giving them a pecuniary interest in the convictions. The class of plaintiffs petitioned the United States District Court for the Middle District of Alabama:
"Plaintiffs seek to have their convictions in Justice of the Peace Courts set aside and injunctions entered against defendant Justices from hearing any pending or future traffic cases.... Plaintiffs further seek restitution of all fines paid by them to Justices of the Peace for traffic violations, punitive damages from those Justices, and compensatory damages from all defendants. Finally, plaintiffs request an award against defendants for attorneys' fees."
Callahan v. Sanders, 339 F.Supp. 814, at 816-17 (M.D.Ala.1971). While the federal district court found that the state practice constituted a denial of due process, no compensatory or punitive damages were awarded, because the action of the justices was not willful.
The federal district court also considered the question of whether the fines paid by members of the class should be refunded and the convictions set aside. The federal district judge stated as follows:
"It has long been settled that when one pays a fine voluntarily under a mistake of law, that fine cannot be recovered unless payment was induced by the fraud or the undue advantage of the one receiving it. Deppe v. Lufkin, 116 F.2d 483 (1st Cir.1940); Blumenthal v. United States, 4 F.2d 808 (S.D.Cal.1925); Miami v. Keton, Fla., 115 So.2d 547 (1959). The evidence presented reflects that the named plaintiffs were guilty as charged. It must be assumed that most, if not all, of the members of the plaintiffs' class also committed the offenses for which they were charged. There is no contention to the contrary. Thus we find plaintiffs and the members of their class pleading guilty and paying fines for highway offenses when they were guilty in fact and were disposing of their misdemeanor cases as expeditiously and conveniently as possible. The fines were not paid because of fraud on the part of the defendants; at the time of their arrests, plaintiffs and their class members were not interested in the constitutionality of *591 Alabama's Justice of the Peace statutory scheme."
Callahan v. Sanders, supra, at 818-19. Thus, the court denied a refund of the fines paid, and the convictions of those in the plaintiff class were not set aside. Id. at 819. The court also denied attorney fees.
The refusal of the federal district judge to order a refund of fines and to grant attorney fees was appealed to the United States Court of Appeals for the Fifth Circuit. Callahan v. Wallace, 466 F.2d 59 (5th Cir.1972). That court upheld the district court's refusal to refund the fines and stated:
"The District Court held that it could be fairly assumed that most of the members of the class had committed the offenses with which they had been charged. It found that plaintiffs and other members of the class, by entering pleas of guilty and paying fines, were simply disposing of their misdemeanor cases as expeditiously and as conveniently as possible. There was evidence that pleas of guilty were entered in an overwhelming majority of traffic cases brought in justice courts, probably 99%, some by the defendant in person, at times by mail, and in many cases the defendant, in a procedure familiar to motorists nationwide, simply forfeited his bond as his fine.
". . . .
"In denying even nominal damages the District Court pointed out the difficulty of administering an award of a small amount to each of some 50,000 persons as compared to the small benefit to each recipient, and the fact that the plaintiffs' rights were vindicated by the action taken in the cases without award of nominal damages. The same considerations apply to attempting to refund more than 50,000 traffic fines averaging $22.00 each to persons many of whom would not be residents of the county where arrested, or even of the state. While not mentioned by the District Court, a related consideration which we perceive is whether if the fines were returned the state would attempt to reprosecute the members of the class in other courts. Exposing a tremendous number of persons to the possibility of retrial is not shown to be in the interest of the class.... We think it highly likely that many in the class would prefer to eschew the dollar benefit sought to be conferred upon them without their knowledge and let sleeping dogs lie."
466 F.2d 59 at 61-62. The Court of Appeals affirmed the district court's holding that there could be no recovery of the fines, but reversed the district court order regarding fees and awarded attorney fees. Id. at 62.
We reach the same conclusions as did the court in Callahan. Plaintiff Brown was tried and found guilty. Plaintiff Duncan pleaded guilty and paid a fine. They sought to dispose of their misdemeanor cases as expeditiously and as conveniently as possible. There is no contention in this case that they did not commit the offenses with which they were charged.
Accordingly, we affirm the judgment of the trial court insofar as it denies the relief sought by the plaintiffs on behalf of Subclass B. They have not shown that the convictions should be vacated, nor have they shown that the fines paid should be returned. The plaintiffs have, however, made a significant contribution to the integrity of our system of jurisprudence in calling attention to a serious flaw in its administration. They have done more in that regard to advance the cause of justice than vacating the judgments of the class members would achieve. We are informed by counsel on both sides of this case that because of this and similar litigation, the practice has been discontinued and that now the officers issuing the UTTC's appear before a judge or magistrate and swear on oath to the charges made therein. We hold that the judgments are not due to be vacated; we also hold that under well settled principles of law, the fines cannot be recovered. However, the plaintiffs are entitled to attorney fees.
The fact that this litigation, by virtue of our rationale and holding, has not produced a monetary recovery does not preclude an *592 award of attorney fees. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391-93, 90 S.Ct. 616, 625-26, 24 L.Ed.2d 593 (1970), states the rule as follows:
"While the general American rule is that attorney's fees are not ordinarily recoverable as costs, both the courts and Congress have developed exceptions to this rule for situations in which overriding considerations indicate the need for such a recovery. A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself.
". . . .
"The fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on this rationale. Although the earliest cases recognizing a right to reimbursement involved litigation that had produced or preserved a `common fund' for the benefit of a group, nothing in these cases indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses. `The foundation for the historic practice of granting reimbursement for the cost of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation. Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 166, 83 L.Ed. 1184, 1187, 59 S.Ct. 777 [780] (1939).' ..."
This litigation clearly resulted in a benefit to the general public. It is unquestionable that plaintiffs' attorneys rendered a public service by bringing an end to an improper practice. The public nature of the services rendered by these lawyers justifies an award of attorney fees. See Callahan v. Wallace, supra, at 62.
We remand this cause to the trial court for proceedings to determine the amount of an attorney fee to be awarded in this case from the State of Alabama, according to these guidelines (which are listed in no particular order):
(1) The measure of success achieved.
(2) The nature and value of the subject-matter of the attorney's employment, including the novelty and difficulty of the questions presented.
(3) The learning, skill, and labor requisite to perform the legal service properly.
(4) The time consumed and reasonable expenses incurred by the attorney.
(5) The professional experience, reputation and ability of the attorney.
(6) The weight of his responsibility.
(7) The fee arrangement between attorney and client, including whether a fee was fixed or contingent.
(8) The fee customarily charged in the locality for similar legal services and awards in similar cases.
(9) The time limitations imposed by the client or by the circumstances.
(10) The likelihood that the attorney's employment in this case precluded other employment.
(11) The nature and length of the professional relationship with the client.
(12) The undesirability of the case.
(13) Any non-monetary benefits conferred upon the class in this class action.
See: Reynolds v. First Alabama Bank of Montgomery, N.A., 471 So.2d 1238 (Ala. 1985), Peebles v. Miley, 439 So.2d 137 (Ala. 1983), Mashburn v. National Healthcare, Inc., 684 F.Supp. 679 (M.D.Ala.1988), and Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and HOUSTON and KENNEDY, JJ., concur.
JONES, ALMON and ADAMS, JJ., concur in part and dissent in part, with opinion by ADAMS, J.
STEAGALL, J., concurs in part and dissents in part, with opinion.
MADDOX, J., dissents.
*593 ADAMS, Justice (concurring in part and dissenting in part).
I dissent in part because I want to state clearly my views concerning the outcome of this case. Although the facts in this case are somewhat different from those in Ex parte Dison, 469 So.2d 662 (Ala.1984), the bottom line is that the class of plaintiffs in the instant case was required to go to trial or plead guilty without a properly verified complaint. This is absolutely forbidden by law, and the trial court did not have jurisdiction to enter its orders under the facts in this case. That being the case, the convictions of the plaintiff class members should be held for naught and expunged from the records of the trial court. I concur in the Court's conclusion that even though the plaintiff class did not prevail, the plaintiffs' attorney performed a great service to the State of Alabama in correcting an evil that went to the very heart of American jurisprudence. It appears that the plaintiffs' attorney had to incur expenses for notification of the members of the class and obviously spent a great deal of time in achieving the result in this case. In addition to the cases cited by the majority, namely, Reynolds v. First Alabama Bank of Montgomery, N.A., 471 So.2d 1238 (Ala.1985), and Peebles v. Miley, 439 So.2d 137 (Ala.1983), see, also, Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 429-30 (8th Cir.1970), for a case reaching a result similar to that reached here regarding attorney fees. The mere fact of the plaintiff's not creating a fund from which a fee could be paid should not be a bar to awarding an appropriate attorney fee where the efforts of the plaintiff's counsel have corrected a wrong that may not have been corrected but for his efforts.
JONES and ALMON, JJ., concur.
STEAGALL, Justice (concurring in part and dissenting in part).
I concur with that part of the majority opinion denying the relief sought by the plaintiffs. I agree that the plaintiffs have not shown that the convictions should be vacated or that the fines paid should be returned.
I respectfully dissent from that part of the majority opinion remanding the cause for an award of an attorney fee. I can see no sound reason to require the State of Alabama to pay an attorney fee for privately retained counsel in such a post-conviction proceeding.
MADDOX, Justice (dissenting).
The essence of the Court's holding is that an offender who is given a traffic ticket and who is notified by the ticket to appear in district court and to answer the charge, and who does appear, not only in district court, but in circuit court, where a jury finds him guilty, can, after his conviction, challenge the conviction on the ground that he did not have notice of the accusation and a copy of it sufficient to give either the district or circuit court jurisdiction over him to render a judgment because the name of the district clerk which appeared on the face was affixed by a person using a rubber stamp, at the direction of the district clerk, and that therefore the lack of a proper attestation was a hidden defect which could not be waived. This holding, in my judgment, is legally wrong, and compels me to dissent.
The basis for my dissent is the same as I used in a dissent in the first case, Ex parte Dison, 469 So.2d 662 (Ala.1984), in which I stated that Judge Harwood (later a Justice of this Court), writing for the Court of Appeals in Pierce v. State, 38 Ala.App. 97, 77 So.2d 507 (1954), cert. denied, 262 Ala. 702, 77 So.2d 512 (1955), opined correctly as follows:
"However, the affidavit is no substantial part of the solicitor's complaint, and is merely to insure good faith in instituting the prosecution. It must be deemed as analogous to the verification to a common law information. The absence of a verification to a common law information does not render it void or deprive a court of jurisdiction, and a failure to verify can be corrected at any time before trial, or in the absence of a showing that the accused has been prejudiced, at any time during trial. See 42 C.J.S., Indictments and Informations, § 86, p. 948.

*594 "The appellants having failed to challenge the solicitor's complaints at any time in the proceedings below, and the complaints not being void but at most only formally defective, and therefore amendable if questioned, they must be deemed to have waived such defect and their challenges now come too late. See Nicholas v. State, 32 Ala.App. 574, 28 So.2d 422."
The issue presented in this casethe verification of a traffic tickethas engendered much disagreement among the learned Justices of this Court. The depth of the disagreement on this principle by members of this Court is graphically shown by the majority and dissenting opinions in Ex parte Dison, 469 So.2d 662 (Ala.1984) (Maddox, J., dissenting), the case which obviously gave rise to this suit, and by the majority and dissenting opinions in City of Dothan v. Holloway, 501 So.2d 1136 (Ala.1986), which overruled Dison, and in which Mr. Justice Beatty, the author of Dison, wrote one of the longest dissents ever written by a Justice on this Court.
The issue is presented once again in this case, and although the main opinion does not disturb Holloway's holding, or rationale, it does hold:
"We cannot say that the use of a rubber stamp by clerk's office personnel to affix the signature of the court clerk to UTTC's, at the direction and with the approval of the clerk, amounted to a fraud in the procurement of the judgment against Brown and other defendants similarly situated; however, we cannot say that the defect we are dealing with in this casea lack of verificationwas one that could be waived."

(Emphasis added.) I must respectfully disagree with the conclusion that the facts presented here are significantly different from those in Holloway, and, therefore, that the result reached in Holloway is not applicable to this case.
I believe the law is clear that a defect in a verification must be raised before trial. Pierce v. State, 38 Ala.App. 97, 77 So.2d 507 (1954), cert. denied, 262 Ala. 702, 77 So.2d 512 (1955).
Because the Court is so sharply divided on the principles of law that should apply concerning the validity of charges for traffic infractions that are set out on UTTC's, I take this opportunity to express, once again, as I did in my dissent in Dison initially, that I am firm in my belief that the lack of verification (Dison, Holloway, and Brown I[8]) or a defective verification, as in this case, are legally the same, and in both instances, are waivable defects. Stated differently, there should be no difference legally between no verification and an improper verification. In fact, improper verifications, even in the case of indictments, are waivable defects.

Improper Verificationa Waivable Defect Even When it Involves Indictments for Felonies
Admittedly, the procedure used by the district clerk to affix her signature to the ticket in this case was irregular. The questions nevertheless are: Was the irregularity one that Brown should have raised before he joined issue on the charge? Even assuming that he did not discover the defect until after his conviction, should he be allowed to challenge, in a post-conviction proceeding, this error, which in no way would affect his guilt or innocence of the stated charge? I think not. In support of my position, there are prior Alabama cases in which indictments were involved, not traffic citations, and this Court refused to invalidate the indictments even when they were shown not to have been properly signed, as here.
In Prince v. State, 140 Ala. 158, 37 So. 171 (1904), this Court held that an indictment was not rendered invalid because the signature of the solicitor was written by someone else.[9]

*595 Qui facit per alium, facit per se[10]
In Benson v. State, 68 Ala. 544 (1881), the defendant, after conviction, moved the court to set aside the verdict, and to arrest the judgment, "`on the ground that the indictment was not indorsed "A true bill" by the foreman of the grand jury.'" The defendant proved irregularities in the signature of the foreman of the grand jury, specifically "`that his signature was not upon the indictment, but that his name was written upon it, under the words, "A true bill," at his request, and in his presence, by the clerk of the grand jury.'" On this evidence, the court overruled the motion, and the defendant excepted. This Court, in an opinion written by Somerville, J., held:
"If the evidence had shown that the indictment was indorsed `A true bill,' in the name of the foreman of the grand jury, and without his authority, it is clear that it could have been quashed on motion. But, as the name was signed in the presence of, and by the direction of the foreman, the clerk of the grand jury acting as his amanuensis in the matter, the signature was, in law, the act of the foreman himself. Qui facit per alium, facit per se. The indictment was not, therefore, invalidated by this irregularity; but such a practice is reprehensible, and not to be indulged, because [it is] liable to lead to unnecessary complications."
68 Ala. at 545-46. Even though this Court found that the practice was "reprehensible," it nevertheless held that the method for attacking the practice was by a motion to quash the indictment. If that is the rule of law involving an indictment, why is it not the rule in this case involving a traffic ticket?
Alabama case law concerning affidavits also states that defects in documentation must be timely raised. See, Wells v. State, 245 Ala. 511, 17 So.2d 878 (1944). See also Bolling v. State, 21 Ala.App. 244, 107 So. 40 (1925); and Fealy v. City of Birmingham, 15 Ala.App. 367, 73 So. 296 (1916), in which it is generally held that objections to the sufficiency of an affidavit must be timely raised.
There are also several cases that stand for the proposition that a defendant may waive the very presentment of a complaint if a demand for presentment is not made at the trial level. See City of Dothan v. Holloway, supra; Ex parte Hood, 404 So.2d 717 (Ala.1981); Chaney v. City of Birmingham, 246 Ala. 147, 21 So.2d 263 (1944); and Aderhold v. City of Anniston, 99 Ala. 521, 12 So. 472 (1892).
Because of this rule of law, I am of the opinion that the use of the rubber stamp was a waivable defect, if a defect at all, and on that point I cite, once again, the two cases cited above: Benson v. State,[11] 68 Ala. 544 (1881), and Prince v. State, 140 Ala. 158, 37 So. 171 (1904).

*596 Conviction was for a Traffic Violation
I think it is significant that this case involves a "traffic violation," and clearly the procedure for handling such charges is different. The Constitution of Alabama, the statutes of this state, and the other laws of the state do not classify a traffic infraction as a serious offense. The law clearly classifies traffic infractions differently, and the Constitution of Alabama, the statutes of this state, and the Rules of Judicial Administration adopted by this Court all put traffic violations in a different category from other offenses.
While the people, by § 6 of their Constitution, have provided that an accused is entitled "to demand the nature and cause of the accusation; and to have a copy thereof" (and while this section applies to traffic cases), I cannot see how this constitutional provision was breached in this case. I am absolutely clear to the conclusion that an improper verification is a waivable defect.

History of Procedure for Charging Misdemeanors
Because of the disagreement in Holloway and the continued disagreement on the Court concerning the requirements of the law regarding the charging of persons who violate the traffic laws, I take this opportunity to state, in more detail, the reason for my dissent in Dison, my concurrence in Holloway, and my dissent once again in this case. In doing that, I will examine Alabama's constitutional provisions as they relate to misdemeanor violations, the statutory provisions, the court rules governing "traffic infraction[s]," and the case law that I think is applicable.

Constitutional Requirements
The Alabama constitutional requirements regarding the initiation of criminal proceedings are contained in Amendment 37 to the Constitution of Alabama 1901, which provides, in part:
"No person shall for any indictable offense be proceeded against criminally by information, except in cases arising in the militia and volunteer forces when in actual service, or when assembled under arms as a military organization, or, by leave of the court, for misfeasance, misdemeanor, extortion and oppression in office, otherwise than is provided in the Constitution; provided, that in cases of misdemeanor, the legislature may by law dispense with a grand jury and authorize such prosecutions and proceedings before justices of the peace or such other inferior courts as may be by law established...."
Under these provisions of the Constitution, no person can be proceeded against by an information,[12] except in certain cases, but the Constitution specifically provides that "the legislature may by law dispense with a grand jury and authorize such prosecutions and proceedings before justices of the peace or such other inferior courts as may be by law established." Of course, Amendment 328 established the Unified Judicial System, and the district court, from which this case arose, is a part of that system. It is clear that the legislature has specifically provided a separate procedure for handling misdemeanor proceedings and has specifically addressed the handling of traffic infractions in a separate part of the Code. See Ala.Code 1975, §§ 12-12-50 through 12-12-55.

*597 The Statutory Provisions
The provisions of Ala.Code 1975, Chapter 7 of Title 15, §§ 15-7-1 through 15-7-4, govern the procedures for handling misdemeanor charges generally, but an entirely different procedure is required by the legislature when the offense is a "traffic infraction" and the charge is made by a law enforcement officer, and under Amendment 37 the legislature is empowered to decide how such offenses shall be prosecuted.

Procedure for "Traffic Infraction"
The procedure for handling traffic infractions is contained in Ala.Code 1975, §§ 12-12-50 through 12-12-55, which provide, as follows:
"12-12-50. `Traffic infraction' defined.
"A `traffic infraction' is any violation of a statute, ordinance or regulation relating to the operation or use of motor or other vehicles or the use of streets and highways by pedestrians.
"12-12-51. District court jurisdiction of misdemeanor prosecutions for traffic infractions.
"The district court shall have exclusive original jurisdiction of misdemeanor prosecutions for traffic infractions, except ordinance infractions prosecuted in municipal courts.
"12-12-52. Receipt of guilty pleas in traffic infraction prosecutions by magistrates.
"Pursuant to the provisions of section 12-17-251, magistrates may receive pleas of guilty in traffic infraction prosecutions, but may not receive pleas in matters involving:
"(1) Violations resulting in personal injury;
"(2) Operation of a motor vehicle while intoxicated;
"(3) Reckless driving;
"(4) Felonies or indictable offenses;
"(5) Operation of motor vehicles without an operator's license or while the license is suspended or revoked; or
"(6) A defendant convicted of two or more previous traffic offenses in the preceding 12 months.
"12-12-53. Requirement of use of uniform traffic ticket and complaint.
"(a) Every law enforcement agency in the state shall use traffic citations of the form known as the uniform traffic ticket and complaint, which shall be substantially uniform throughout the state and which shall be issued in books with citations in no less than quadruplicate.
"(b) The uniform traffic ticket and complaint shall be used in traffic cases where a complaint is made by a law enforcement officer or by any other person or an information is filed by the district attorney.
"12-12-54. Designation of personnel responsible for accounting for uniform traffic tickets and complaints and proper disposition of forms; requirement of preparation of records and reports pertaining to uniform traffic tickets and complaints.
"The judge or judges and the clerk of the district court shall designate personnel to be responsible for accounting for all uniform traffic tickets and complaints issued to law enforcement officers or others in his or their jurisdiction and for the proper disposition of the forms and shall cause to be prepared records and reports relating to the uniform traffic tickets and complaints in the manner and at the time as may be prescribed by rule of the supreme court.
"12-12-55. Establishment of schedules of fines for traffic infractions; provision for manner of payment and accounting for of fines and costs.
"Schedules of fines to be imposed for traffic infractions shall be established by law or rule.
"The manner in which fines and costs shall be paid to and accounted for by personnel assigned to accept payment shall be provided by administrative rule."
As is readily apparent, § 12-12-53 requires that "every law enforcement agency" use the uniform traffic ticket and complaint, "which shall be substantially uniform throughout the state and which shall be issued in books with citations in no less than quadruplicate." (Emphasis added.) *598 Pursuant to this legislative provision, which requires the use of the uniform traffic ticket and complaint, this Court, under its rule-making power,[13] adopted Rule 19, Rules of Judicial Administration, effective April 1, 1977, which, among other things, sets out the actual content of the Uniform Traffic Ticket and Complaint. This form, of course, does include a space for a magistrate's verification,[14] and I make no point of that except to say that I believe the legislature could authorize the commencement of any misdemeanor case by an unverified complaint; therefore, I would have to disagree with any holding that every criminal proceeding must be begun by a verified complaint. I need not discuss that issue in great detail, however, except to say I think that the legislature could authorize the prosecution of violations of the traffic laws by use of a "citation."[15]
*599 Because of the strict requirements of the law for accountability for each ticket issued to a law enforcement agency,[16] there is little chance that an accused will not know what he or she is charged with and the name of the complaining law enforcement officer, because the "traffic citation" is given to the motorist at the time of the arrest by the law enforcement officer making the arrest.

Holloway and Brown I Apply
The Court finds that Holloway does not apply and basically adopts Brown's argument that because there appeared to be a proper signature on the ticket, Brown was not put on notice that it was affixed by the use of a rubber stamp,[17] but, to its credit, the majority refuses to accept Brown's "fraud" argument.

A Class Action Cannot be Maintained
The complaint in this case, filed as a class action, is technically nothing more than a common law writ of error coram nobis,[18] and the office of this writ was set forth by the late Judge Aubrey M. Cates, Jr., in a scholarly opinion in Argo v. State, 43 Ala.App. 564, 195 So.2d 901, cert. denied, 280 Ala. 707, 195 So.2d 909, cert. denied, 389 U.S. 865, 88 S.Ct. 129, 19 L.Ed.2d 136 (1967):

*600 "Under the Alabama concept of the remedy afforded by the writ of error coram nobis, the prisoner must plead and prove that he had a valid defense to the original charge of which he stands convicted. Ex parte Taylor, 249 Ala. 667, 32 So.2d 659; Ex parte Fewell, 261 Ala. 246, 73 So.2d 558; Ex parte Argo, 41 Ala.App. 442, 137 So.2d 775[755]; Ex parte Anderson, 41 Ala.App. 620, 147 So.2d 862; Woodard v. State, 42 Ala. App. 552, 171 So.2d 462 (hn. 5-8); Ex parte Davis, 43 Ala.App. 188, 185 So.2d 417; Freeland v. State, 43 Ala.App. 406, 191 So.2d 245 (hn. 7). See also Wiman v. Argo, 5 Cir., 308 F.2d 674, and Ard v. State, 42 Ala.App. 505, 169 So.2d 327.
"After a trial where the verdict follows disputed testimony, a court reviewing by way of coram nobis starts with the original judgment standing as an evidentiary fact of adjudicated guilt. The prisoner bears the onus of overturning this product of the merger of law of the case with verdict-found fact.
"Setting out, he burdens himself to adduce evidencebeyond a mere balancing of probabilitieswhich clearly and convincingly should satisfy the court that (a) the original judgment was tainted with fraud, actual or constructive, (b) there was no acquiescence by the defense therein, (c) a factual basis existed which if made known would prevent original judgment and (d) the failure to make this exonerating fact known earlier is not chargeable to the prisoner. Ex parte Rudolph, 276 Ala. 392, 162 So.2d 486; Allen v. State, 42 Ala.App. 9, 150 So.2d 399; Ex parte Jett, 42 Ala.App. 602, 172 So.2d 811.

"Coram nobis would be reduced to a mere scholastic exercise if its office were to determine whether or not some procedural nicety even under an elastic claim of constitutional right was omitted at the original trial without showing that justice has miscarried. Moot courts are useful but their writs do not run to our prison wardens." (Emphasis added.)
During my research, I located the Callahan v. Wallace[19] case used by the majority in support of its opinion, and Callahan, a federal action under a civil rights statute, did permit a class action. I do not think Callahan is similar to this case, but even assuming that it is, I think the majority correctly uses it for the principles of law relating to repayment of fines, etc.

Attorney Fees Should Not be Awarded
I now come to another very disturbing principle of law announced for the first time in this casethe right of a petitioner to recover attorney fees for his privately retained counsel.
While I do not question the power of this Court to award such fees, I do question how this litigation "resulted in a benefit to the general public." In Callahan v. Wallace, 466 F.2d 59 (5th Cir.1972), cited in support of the award, there was the vindication of a constitutional right. It is my opinion that the release of Ex parte Dison by this Court is what really changed the procedures used by magistrates, not the filing of this suit. In fact, Ex parte Dison formed the basis for this suit; therefore, I cannot agree that counsel performed a great public service.

Conclusion
While I do not agree that this suit should be allowed, I applaud the remedy given insofar as it refuses to set aside the convictions and return the fines. I also agree that our Rule 19, which sets out the form of a traffic ticket, should be verified. Although I question what additional validity the verification gives to the traffic charge, or what further notice a verification gives the defendant over and above what he or she was given by the copy of the ticket given to him or her at the time of arrest, I do agree that a UTTC should be verified. I have remained constant, however, in my opinion that the lack of a verification or an improper verification, is a waivable defect.
Based on the foregoing, I am of the opinion that the judgment of the trial court dismissing the complaint as to each defendant *601 should be affirmed; consequently, I must dissent.
NOTES
[1] Dison was arrested by an Alabama state trooper for D.U.I. The arresting officer signed the UTTC, but it was not sworn to and acknowledged by a judge or magistrate prior to or during the district court proceedings. Dison was tried in district court, was found guilty, and was fined $200. He appealed to circuit court, where the district attorney filed a separate complaint. Dison moved to dismiss the complaint on the ground that the district court judgment was void, being based upon an unverified UTTC. The circuit judged denied the motion. Dison was found guilty and was fined $200. Id. at 663.
[2] James Clyde Brown was arrested for driving under the influence of alcohol. He was issued a UTTC. Court personnel stamped the clerk's name on the UTTC without proper verification from the issuing officer. Brown appeared in the District Court of Montgomery County and was convicted. He appealed his conviction to the Circuit Court of Montgomery County and was convicted there in a trial de novo.
[3] Duncan was arrested for driving under the influence. He pleaded guilty and paid a fine.
[4] The City of Birmingham intervened in this suit. The trial judge learned during the hearing that an identical suit was pending in Jefferson County (the Tenth Judicial Circuit), and he excluded that circuit when he certified the class.
[5] Subclass A contained those persons whose tickets showed on the face that they were not verified. Generally, Subclass A consisted of those whose tickets did not contain a signature of acknowledgement, such as in Holloway.
[6] The plaintiffs' brief states as follows: "This appeal addresses a significantly smaller sub-class of defendants convicted in Montgomery County District Court onlydefendants who were victims of a fraud upon the Montgomery County District Court which could not have been waived because it was concealed by a fraudulent act which purported to confer jurisdiction upon the court." (Plaintiffs' brief, page 10. See also Plaintiffs' brief, page 3.)
[7] Callahan v. Sanders, 339 F.Supp. 814 (M.D. Ala.1971), and Callahan v. Wallace, 466 F.2d 59 (5th Cir.1972).
[8] State v. Brown, 514 So.2d 836 (Ala.1987).
[9] In Prince, the report of the case shows the following:

"The defendant demurred to the indictment upon the ground that while it purported to be signed by Benjamin F. Elmore, it was not, as a matter of fact signed by him, but the name `Benjamin F. Elmore' signed to said indictment was written by W.C. Harrison, Jr., and not by Benjamin F. Elmore. At the bottom of this demurrer there was the following statement, which was signed by the defendant's attorney: `And the defendant pleads the above also in abatement to said indictment.' The demurrer was overruled, but the judgment entry does not show that the plea in abatement was passed upon." The Court held:
"It was not essential to the validity of the indictment that it should have been prepared or signed by the solicitor. It `receives its legal efficacy from the finding and return of the grand jury; and the legal evidence of its verity is the return "A true bill," apparent upon some part of it bearing the signature of the foreman.' Holly [Holley] v. State, 75 Ala. 14; Joyner v. State, 78 Ala. 448. Assuming the efficacy of the demurrer interposed to raise this point, it was without merit. Of course, if it was abortive in this respect the same conclusion would follow. It also appears that the facts stated in the demurrer were, by the reference to it, pleaded in abatement, but this plea does not appear to have been brought to the attention of the court, nor was issue joined upon it, nor was any evidence introduced in support of it. We must, therefore, presume that it was abandoned."
[10] He who acts through another acts himself. Black's Law Dictionary 1413 (4th ed. 1968).
[11] The Benson case, I feel, is especially applicable because it involved a situation in which the verifying signature of the foreman of the grand jury was affixed by the clerk to the phrase "a true bill." Benson held at least two things: 1) If the foreman authorized the clerk to sign the foreman's name, it was authentic enough not to void the indictment, and 2) defects in the indictment should be raised before trial rather than after conviction.
[12] An information is a charge presented by a public officer upon his oath of office. In Gunn v. City of Birmingham, 402 So.2d 1122 (Ala.Cr. App.1981), Judge Harris, writing for the court, explained the office of an information:

"The term complaint, used in this sense, is synonymous with the term information, and is an economical, convenient, and speedy aid to the administration of justice which omits the necessity of a grand jury indictment. Ex parte State, 71 Ala. 371 (1882); see Black's Law Dictionary, 4th Edition Revised, 1968, Complaint, Information defined. The Constitution of Alabama of 1901, Art. I § 8, (amendment # 37), makes specific provisions for the omission of grand jury indictments in the prosecution and proceedings in certain well defined situations. Accordingly, Alabama cases have treated complaints of this nature much the same as if they were indictments and have applied the substantive laws of each interchangeably."
[13] Section 6.11, Amendment 328.
[14] There is nothing in the official minutes of the Court, insofar as I know, to indicate why the Administrative Office of Courts elected to require that traffic tickets be verified. At that time in other jurisdictions, there was increasing use of the "citation," the word used in § 12-12-53, as a means of providing notice to an accused in cases involving misdemeanor or traffic infractions.

Even though official Court records do not contain some of the correspondence surrounding the adoption of Rule 19, I have maintained an independent file in my office, and I include some of it for a better presentation of the point that I make in this dissent.
From time to time the form of the UTTC has been modified or changed by the Court. Rule 19 of the Rules of Judicial Administration adopted the form of the Uniform Traffic Ticket and Complaint, which, according to my records, was first tested in Pike County and was subsequently distributed for use statewide on April 1, 1977, the effective date of Rule 19.
Records in my office indicate that there has always been a space on the ticket for a verification of the charge; therefore, I make no point that Rule 19 does not require verification, only that a defective verification is a waivable defect and does not affect the validity of a conviction, if waived. My recollection concerning the verification requirement is that the Court elected to require verification of the traffic citations, but I am not aware of what efforts were made administratively to educate users of the tickets concerning the point in time at which verification should be made. Clearly, the copy of the ticket given to the offender is not verified, but the failure of an offender to appear as required by the ticket to answer the charge can result in a warrant of arrest being issued. The Dison decision, of course, was an impact decision, and my files indicate that the Administrative Office of Courts has, from time to time, provided administrative assistance in the form of a Uniform Traffic Ticket and Complaint Manual, which was last revised in July 1986, but I have no information concerning what instructions were given to personnel using the UTTC concerning the verification requirement. The latest revised manual contains specific instructions on the accountability of traffic tickets and sets out the offenses that can be charged by a traffic ticket and complaint, and the post-Dison manual contains instructions concerning the verification requirements imposed by that case.
My files also indicate that there was debate among members of the Court at the time concerning changing Rule 19 to apply in all cases involving misdemeanors, not just traffic offenses, but the Court did not adopt such a rule. Some jurisdictions have adopted such a rule and do not require that the arresting officer have the traffic ticket verified. My files indicate that former Chief Justice C.C. "Bo" Torbert, Jr., corresponded with Carl F. Bianchi, administrative director of the courts for the State of Idaho, and was advised that in Idaho, by court rule, "the citation may be used without a complaint to prosecute any misdemeanor." (Emphasis added.) Letter from Bianchi to Torbert, dated August 1, 1980.
[15] "Citation" is defined in Black's Law Dictionary 309 (4th ed. 1968), as follows:

"A writ issued out of a court of competent jurisdiction, commanding a person therein named to appear on a day named and do something therein mentioned, or show cause why he should not. Proctor, Prac. Sheldon v. Sheldon, 100 N.J.Eq. 24, 134 A. 904, 907. An order or summons by which a defendant is directed or notified to appear. Adams v. Citizens Bank, 136 So. 107, 109, 17 La.App. 422; Burrage v. Hunt Production Co., Tex.Civ.App., 114 S.W.2d 1228, 1239. The act by which a person is so summoned or cited.
"It is usually original process in any proceeding where used, and in such respect is analogous to a writ of capias or summons at law and subpoena in chancery. Gondas v. Gondas, 99 N.J.Eq. 473, 134 A. 615, 618.
"As the act of the court through its proper officer commanding the appearance of defendant at the time and place named to answer to plaintiff's petition, it has the dignity of official character and weight of superior authority. Moran Oil & Gas Co. v. Anderson, Tex.Civ.App., 223 S.W. 1031, 1032. It is used in this sense, in American law, in the practice upon writ of error from the United States supreme court, and in the proceedings of courts of probate in many of the states. Duties v. Durfee, 293 Mass. 472, 200 N.E. 395, 397; Schwartz v. Lake, 109 La. 1081, 34 So. 96.
"It is also the name of the process used in the English ecclesiastical, probate, and divorce courts to call the defendant or respondent before them. 3 VI.Comm. 100; 3 Steph. Comm. 720. And in Scotch practice it is the calling of a party to an action done by an officer of the court under a proper warrant; the service of a writ or bill of summons. Paters. Comp."
[16] To prevent the improper issuance of traffic tickets, and to prevent a law enforcement officer or other person from tearing up a ticket, there are strict accountability requirements in the statutes and in Rule 19 for each and every Uniform Traffic Ticket and Complaint "issued to law enforcement officers." See § 12-12-54 and Rule 19(a)(5).
[17] Brown's actual argument in his brief is:

"In City of Dothan v. Holloway, 501 So.2d 1136 (Ala.1986), this Court held that the absence of a magistrate's signature upon a UTTC is a waivable defect, and in Brown I, supra, this Court followed Holloway to a conclusion that Sub-Class A (composed of defendants similar to Holloway) was similarly barred from recovery in this class action.
"This appeal addresses a significantly smaller sub-class of defendants convicted in Montgomery County District Court onlydefendants who were victims of a fraud upon the Montgomery County District Court which could not have been waived because it was concealed by a fraudulent act which purported to confer jurisdiction upon the court. It also returns the Court's attention to a narrow exception to its holdings in Holloway and Brown I, recognized in Cherry v. State, 491 So.2d 1003 (Ala.1986), as applicable to `wrongdoing or mischief on the part of a person pretending to be a magistrate."
But even assuming that the ticket was required to be verified before it was accepted for filing and disposition, there is nothing in this record to show that a "fraud" was practiced on the court, and there is certainly nothing to support Brown's arguments in his brief that "[s]ubject matter jurisdiction was never obtained by the District Court of Montgomery County, Alabama," and that "[a] fraud apparent neither to the district court nor [to] the members of Sub-Class B prevented each member of this sub-class from having an opportunity to consider waiving the jurisdictional defect which was occasioned by forgery by a mysterious woman whom Jewel Ryals could identify only by her misdeed." Jewel Ryals, whose name is on the ticket as the officer before whom the ticket was verified, admitted in sworn testimony, which appears in the record, that before the decision of this Court in Dison a young lady in her officer used "my stamp to put my name on there." Of course, Brown's characterization in his brief of the testimony that there was a "forgery by a mysterious woman whom Jewel Ryals could identify only by her misdeed," is not a fair characterization of her testimony. The record shows that Ryals actually testified as follows:
"Q. How did you signature come to be affixed to this ticket?
"Mr. Maddox: Object, Your Honor.
"The Court: Overruled. If she knows. If you don't know, you don't know. Do you know how it came to be affixed?
"The Witness: Oh, yes.
"The Court: Okay. Go ahead and answer.
"The Witness: The young lady, uhI was trying to think of who she is. Right there, (indicating) She uses my stamp to put my name on there."
Clearly, this testimony shows that Ryals knew the person she had authorized to put her name on the tickets.
[18] Temporary Rule 20, Alabama Rules of Criminal Procedure, which now controls all post-conviction proceedings, had not been adopted when this case was filed.
[19] 466 F.2d 59 (5th Cir.1972).