77 So.2d 507

A. L. PIERCE, Harvel Pettus, Arthur Thompson and L. E. (Buddie) Thompson

v.

STATE.

I Div. 678.

Court of Appeals of Alabama.

Dec. 7, 1954.

Rehearing Denied Dec. 21, 1954.

98

Granade & Granade, Chatom, for appellants.

Si Garrett, Atty. Gen., and Robt. P. Bradley, Asst. Atty. Gen., for the State.

## HARWOOD, Judge.

These appellants were charged by a solicitor's complaint with taking, catching, or killing, or attempting to take, catch, or kill, between sunset and daylight, wild animals or birds protected by the laws of this State, an offense denounced by Section 86, Title 8, Code of Alabama 1940.

The case came to the Circuit Court of Washington County after appellants' conviction upon the same charges in the justice court of S. B. Lynes, J. P.

In the circuit court the cases against these four appellants were tried jointly, and by agreement appeal was perfected to this court upon a consolidated record.

For the State Mr. Percy Beech testified that on the afternoon of 11 November 1951 he was riding with Robert Henson and Carey Henson. About "dusky dark" while going down a road by "the upper Dickey field where it intersects the road at Cajun Springs" they passed another automobile moving slowly. It was too dark to see the occupants, but Robert Henson wrote down the tag number of the automobile. The car in which the appellants were riding at the time of their arrest later in the night bore this same tag number.

Later that night Sonny Floyd came to Mr. Beech and reported that "somebody was headlighting" in Dickey's field.

Beech then drove toward the area and met the same automobile whose tag number he had taken earlier. The car was driving very slowly, and he could see it had a spot light on it. He then drove by and picked up Frank Dickey, a State Game Warden.

Beech and Mr. Dickey returned in search of the car Beech had seen, and first saw it about two miles out from Wagarville, travelling very slowly. Then according to Mr. Dickey:

"We let it pass us. It was not shining right then so we ducked in the Pea Ridge Road. It was gone 10 or 15 minutes and then came back, driving slow, headed toward Chatom. We followed it without lights near the lower Hobson Road. We saw him turn in there. We knew there was cattle on top of the hill that belonged to John Dickey and there had been a cow or two killed in there. We heard shots often around that pasture and there is lot of deer there. They passed through there and we did not hear any shot at all. We followed the car to where it turned off. We gave him time to pass the field. We figured he would turn around—

"Mr. Granade: I object to what he figured.

"Court: I sustain the objection.

"Q. Did he turn around? A. He turned around in front of the old Sid Sullivan place and headed toward the highway. We passed him and he was almost stopped, if he was not, when we passed him. We went to where he turned around and we saw the car shining the spotlight in the pasture."

Mr. Dickey further testified that the John Dickey field or pasture, about 30 or 40 acres in size, was planted in rye grass and clover, which is eaten by deer, and the field was located in an area where there was usually a concentration of deer.

The officers observed the spot light on the automobile being shined across the hood of the automobile into the pasture. When they arrived at the car Arthur Thompson was sitting on the right side of the front seat with a single barreled shotgun sticking out of the window on that side. The appellant Pettus was in the driver's seat, and Mr. Jim Thompson, father of the two Thompson appellants, sat between them.

The appellants L. E. Thompson and Pierce occupied the back seat.

The shotgun was loaded with a buckshot shell, and Arthur Thompson handed the officers another buckshot shell when he was arrested.

The automobile bore the same tag as that observed earlier by Beech.

The evidence presented by the defense was to the effect that four appellants had left Mobile about five o'clock in the afternoon and had driven to Washington County to pick up some clothing for L. E. Thompson's wife and child, the Thompsons having formerly resided in Washington County. They first drove to Mr. Henry Loper's house in Washington County, and after about a forty minute visit there drove to a relative's home where they ate and visited. About eleven o'clock they started to return to Mobile, being accompanied by Mr. Jim Thompson, the father of the Thompson appellants.

They denied they had been in the area where State's witness Beech testified he had observed a car bearing the license number of their automobile in the late afternoon.

It was their contention that the gun which Arthur Thompson had would not shoot, and they had it for the purpose of taking it to Mobile for repairs.

In this connection it might be observed that a day or so after arresting appellants the officers tested the gun by firing it, and according to Mr. Dickey: "It shot as good as any gun."

The evidence presented, and the reasonable inferences to be drawn therefrom was, in our opinion, fully sufficient to support the verdict rendered and the judgment entered. No error resulted from the refusal of appellants' requests for the affirmative charge, nor in the denial of their motions for new trials, in these aspects of the cases.

Counsel for appellants strenuously argues however that the appellants were entitled to have their requests for the affirmative charge granted for the reason that no affidavits and warrants appear in the record, and therefore the solicitor's complaint in each case is unsupported.

It appears from the record that the appellants filed in the circuit court appeal bonds from their convictions in the justice court.

There is considerable contradiction in the evidence as to whether these appellants pled guilty in the justice court, they denying such fact, and the State's evidence tending to show they did so plead.

As we see it, this is immaterial in view of the appeal bonds filed by them reciting specifically their convictions in the justice court.

These bonds are in usual form, and we see no need to set them out. The bonds themselves conferred jurisdiction on the Circuit Court of Choctaw County. McLosky v. State, 210 Ala. 458, 98 So. 708; Ford v. City of Birmingham, 35 Ala.App. 371, 47 So.2d 287.

In the circuit court the solicitor filed a complaint conforming to the words of the statute. The sufficiency of this complaint was in nowise questioned in the proceedings below.

It is true that a solicitor's complaint must rest upon a charge supported by an affidavit. Usually the affidavit filed in the inferior court from which the appeal is taken serves this purpose. Horn v. State, 22 Ala.App. 459, 117 So. 283.

■■ However, the affidavit is no substantial part of the solicitor's complaint, and is merely to insure good faith in instituting the prosecution. It must be deemed as analogous to the verification to a common law information. The absence of a verification to a common law information does not render it void or deprive a court of jurisdiction, and a failure to verify can be corrected at any time before trial, or in the absence of a showing that the accused has been prejudiced, at any time during trial. See 42 C.J.S., Indictments and Informations, § 86, p. 948.

■ The appellants having failed to challenge the solicitor's complaints at any time in the proceedings below, and the complaints not being void but at most only formally defective, and therefore amendable if questioned, they must be deemed to have waived such defect and their challenges now come too late. See Nicholas v. State, 32 Ala.App. 574, 28 So.2d 422.

Counsel for appellant argues numerous rulings pertaining to the admission or rejection of evidence. We say argue advisedly, for not a single authority is cited in counsel's entire brief in support of his contentions.

During the direct examination of the appellant Harvel Pettus the court sustained objections to several questions seeking to elicit testimony as to whether Mr. Lynes, the justice of the peace, had refused to let him appeal; or was he ever able to get an appeal bond, etc.

■ In view of the fact that an appeal was perfected, such testimony was immaterial and irrelevant to the issues, and the court properly sustained the State's objections.

■ The defendants objection to a question to State's witness Dickey as to whether there was usually a concentration of deer in the particular area where appellants were arrested was supported by general grounds only. The evidence sought was not obnoxious to all rules of evidence, and in fact if properly predicated on witness' knowledge would be material to the issues. Error will not be cast upon the trial court in this instance in this state of the record.

No error resulted in the court overruling defendants' objection to the question propounded to State's witness Lynes as to how long it took to get the defendants back into Washington County. The witness' answer that he did not remember how long it took to get them back rendered the matter innocuous.

■ The defense objection to the question propounded to State's witness Dickey as to whether the appellants did not plead guilty before justice of the peace Lynes was not interposed until after the witness had answered the question. It was therefore too late.

■ The court properly sustained the State's objection to the question propounded to defense witness Sullivan as whether he knew that Mr. Jim Thompson had "started to carry that gun to Mobile to get it fixed." The question called for the witness to testify to the mental operation of a third party.

■ During the direct examination of the appellant Pettus he was asked: "As a matter of fact, nobody was guilty was they?" The witness answered "Absolutely not." Thereafter the solicitor objected and the court announced "I will let that remain in as far as he is concerned." Counsel for the defense reserved an exception to thus limiting the answer. Patently, there is nothing in this ruling of which the appellants can complain.

During the cross examination of defense witness Curtis Sullivan the record shows the following:

"Q. Do you know if that gun would fire on November 12, 1951 or not? A. Was that after the warden taken the gun?

"Q. No, that was the night they caught these boys hunting. A. No, I don't.

"Mr. Granade: I object to the solicitor constantly telling the jury about the 'night they caught these boys hunting.' That is the question for the jury to decide.

"Court: I overrule the objection.

"Mr. Granade: We except and move to exclude the statement on the part of the solicitor from the jury.

"Court: I overrule the motion.

"Mr. Granade: We except."

There had been numerous questions asked in prior examinations of witnesses relative to "the night these boys were accused of night hunting," or "the night it was alleged they were night hunting," etc.

■ Technically, the court should have excluded the above statement of the solicitor made in the form of a question. However we doubt that the jury were particularly influenced by the above incident. At any rate we are unwilling to base a reversal of this case on this ruling. Sup. Ct. Rule 45.

The record shows the following at the opening of the trial below:

"Mr. Turner in opening remarks to jury stated: 'An officer of this State fired this shotgun.'

"Mr. Granade objected to this statement. The Court overruled the objection and Mr. Granade excepted to the ruling of the Court."

Counsel's insistence of reversible error growing out of the above ruling is without merit.

■ In the first place, the fragmentary nature of the remark complained of, taken out of context from the fuller remarks of the solicitor, is too meager to permit an intelligent review. Further the opening statement of counsel is not evidence, but is made merely to advise the jury concerning the issues of facts involved. The State did present evidence tending to substantiate the solicitor's remark. Such evidence was material to the issues.

Affirmed.