The essence of the Court's holding is that an offender who is given a traffic ticket and who is notified by the ticket to appear in district court and to answer the charge, and who does appear, not only in district court, but in circuit court, where a jury finds him guilty, can, after his conviction, challenge the conviction on the ground that he did not have notice of the accusation and a copy of it sufficient to give either the district or circuit court jurisdiction over him to render a judgment because the name of the district clerk which appeared on the face was affixed by a person using a rubber stamp, at the direction of the district clerk, and that therefore the lack of a proper attestation was a hidden defect which could not be waived. This holding, in my judgment, is legally wrong, and compels me to dissent.
The basis for my dissent is the same as I used in a dissent in the first case, Ex parte Dison, 469 So.2d 662 (Ala. 1984), in which I stated that Judge Harwood (later a Justice of this Court), writing for the Court of Appeals in Pierce v. State,38 Ala. App. 97, 77 So.2d 507 (1954), cert. denied, 262 Ala. 702,77 So.2d 512 (1955), opined correctly as follows:
 "However, the affidavit is no substantial part of the solicitor's complaint, and is merely to insure good faith in instituting the prosecution. It must be deemed as analogous to the verification to a common law information. The absence of a verification to a common law information does not render it void or deprive a court of jurisdiction, and a failure to verify can be corrected at any time before trial, or in the absence of a showing that the accused has been prejudiced, at any time during trial. See 42 C.J.S., Indictments and Informations, § 86, p. 948. *Page 594 
 "The appellants having failed to challenge the solicitor's complaints at any time in the proceedings below, and the complaints not being void but at most only formally defective, and therefore amendable if questioned, they must be deemed to have waived such defect and their challenges now come too late. See Nicholas v. State, 32 Ala. App. 574, 28 So.2d 422."
The issue presented in this case — the verification of a traffic ticket — has engendered much disagreement among the learned Justices of this Court. The depth of the disagreement on this principle by members of this Court is graphically shown by the majority and dissenting opinions in Ex parte Dison,469 So.2d 662 (Ala. 1984) (Maddox, J., dissenting), the case which obviously gave rise to this suit, and by the majority and dissenting opinions in City of Dothan v. Holloway,501 So.2d 1136 (Ala. 1986), which overruled Dison, and in which Mr. Justice Beatty, the author of Dison, wrote one of the longest dissents ever written by a Justice on this Court.
The issue is presented once again in this case, and although the main opinion does not disturb Holloway's holding, or rationale, it does hold:
 "We cannot say that the use of a rubber stamp by clerk's office personnel to affix the signature of the court clerk to UTTC's, at the direction and with the approval of the clerk, amounted to a fraud in the procurement of the judgment against Brown and other defendants similarly situated; however, we cannot say that the defect we are dealing with in this case — a lack of verification — was one that could be waived."
(Emphasis added.) I must respectfully disagree with the conclusion that the facts presented here are significantly different from those in Holloway, and, therefore, that the result reached in Holloway is not applicable to this case.
I believe the law is clear that a defect in a verification must be raised before trial. Pierce v. State, 38 Ala. App. 97,77 So.2d 507 (1954), cert. denied, 262 Ala. 702, 77 So.2d 512
(1955).
Because the Court is so sharply divided on the principles of law that should apply concerning the validity of charges for traffic infractions that are set out on UTTC's, I take this opportunity to express, once again, as I did in my dissent inDison initially, that I am firm in my belief that the lack of verification (Dison, Holloway, and Brown I[8]) or a defective verification, as in this case, are legally the same, and in both instances, are waivable defects. Stated differently, there should be no difference legally between no verification
and an improper verification. In fact, improper verifications, even in the case of indictments, are waivable defects.
 Improper Verification — a Waivable Defect Even When it Involves Indictments for Felonies
Admittedly, the procedure used by the district clerk to affix her signature to the ticket in this case was irregular. The questions nevertheless are: Was the irregularity one that Brown should have raised before he joined issue on the charge? Even assuming that he did not discover the defect until after his conviction, should he be allowed to challenge, in a post-conviction proceeding, this error, which in no way would affect his guilt or innocence of the stated charge? I think not. In support of my position, there are prior Alabama cases in which indictments were involved, not traffic citations, and this Court refused to invalidate the indictments even when they were shown not to have been properly signed, as here.
In Prince v. State, 140 Ala. 158, 37 So. 171 (1904), this Court held that an indictment was not rendered invalid because the signature of the solicitor was written by someone else.[9] *Page 595 
 Qui facit per alium, facit per se[10]
In Benson v. State, 68 Ala. 544 (1881), the defendant, afterconviction, moved the court to set aside the verdict, and to arrest the judgment, " 'on the ground that the indictment was not indorsed "A true bill" by the foreman of the grand jury.' " The defendant proved irregularities in the signature of the foreman of the grand jury, specifically " 'that his signature was not upon the indictment, but that his name was written upon it, under the words, "A true bill," at his request, and in his presence, by the clerk of the grand jury.' " On this evidence, the court overruled the motion, and the defendant excepted. This Court, in an opinion written by Somerville, J., held:
 "If the evidence had shown that the indictment was indorsed 'A true bill,' in the name of the foreman of the grand jury, and without his authority, it is clear that it could have been quashed on motion. But, as the name was signed in the presence of, and by the direction of the foreman, the clerk of the grand jury acting as his amanuensis in the matter, the signature was, in law, the act of the foreman himself. Qui facit per alium, facit per se. The indictment was not, therefore, invalidated by this irregularity; but such a practice is reprehensible, and not to be indulged, because [it is] liable to lead to unnecessary complications."
68 Ala. at 545-46. Even though this Court found that the practice was "reprehensible," it nevertheless held that the method for attacking the practice was by a motion to quash the indictment. If that is the rule of law involving anindictment, why is it not the rule in this case involving a traffic ticket?
Alabama case law concerning affidavits also states that defects in documentation must be timely raised. See, Wells v.State, 245 Ala. 511, 17 So.2d 878 (1944). See also Bolling v.State, 21 Ala. App. 244, 107 So. 40 (1925); and Fealy v. City ofBirmingham, 15 Ala. App. 367, 73 So. 296 (1916), in which it is generally held that objections to the sufficiency of an affidavit must be timely raised.
There are also several cases that stand for the proposition that a defendant may waive the very presentment of a complaint if a demand for presentment is not made at the trial level. SeeCity of Dothan v. Holloway, supra; Ex parte Hood, 404 So.2d 717
(Ala. 1981); Chaney v. City of Birmingham, 246 Ala. 147,21 So.2d 263 (1944); and Aderhold v. City of Anniston, 99 Ala. 521,12 So. 472 (1892).
Because of this rule of law, I am of the opinion that the use of the rubber stamp was a waivable defect, if a defect at all, and on that point I cite, once again, the two cases cited above: Benson v. State,[11] 68 Ala. 544 (1881), and Prince v.State, 140 Ala. 158, 37 So. 171 (1904). *Page 596 
 Conviction was for a Traffic Violation
I think it is significant that this case involves a "traffic violation," and clearly the procedure for handling such charges is different. The Constitution of Alabama, the statutes of this state, and the other laws of the state do not classify a traffic infraction as a serious offense. The law clearly classifies traffic infractions differently, and the Constitution of Alabama, the statutes of this state, and the Rules of Judicial Administration adopted by this Court all put traffic violations in a different category from other offenses.
While the people, by § 6 of their Constitution, have provided that an accused is entitled "to demand the nature and cause of the accusation; and to have a copy thereof" (and while this section applies to traffic cases), I cannot see how this constitutional provision was breached in this case. I am absolutely clear to the conclusion that an improper verification is a waivable defect.
 History of Procedure for Charging Misdemeanors
Because of the disagreement in Holloway and the continued disagreement on the Court concerning the requirements of the law regarding the charging of persons who violate the traffic laws, I take this opportunity to state, in more detail, the reason for my dissent in Dison, my concurrence in Holloway, and my dissent once again in this case. In doing that, I will examine Alabama's constitutional provisions as they relate to misdemeanor violations, the statutory provisions, the court rules governing "traffic infraction[s]," and the case law that I think is applicable.
 Constitutional Requirements
The Alabama constitutional requirements regarding the initiation of criminal proceedings are contained in Amendment 37 to the Constitution of Alabama 1901, which provides, in part:
 "No person shall for any indictable offense be proceeded against criminally by information, except in cases arising in the militia and volunteer forces when in actual service, or when assembled under arms as a military organization, or, by leave of the court, for misfeasance, misdemeanor, extortion and oppression in office, otherwise than is provided in the Constitution; provided, that in cases of misdemeanor, the legislature may by law dispense with a grand jury and authorize such prosecutions and proceedings before justices of the peace or such other inferior courts as may be by law established. . . ."
Under these provisions of the Constitution, no person can be proceeded against by an information,[12] except in certain cases, but the Constitution specifically provides that "the legislature may by law dispense with a grand jury and authorize such prosecutions and proceedings before justices of the peace or such other inferior courts as may be by law established." Of course, Amendment 328 established the Unified Judicial System, and the district court, from which this case arose, is a part of that system. It is clear that the legislature has specifically provided a separate procedure for handlingmisdemeanor proceedings and has specifically addressed the handling of traffic infractions in a separate part of the Code.
See Ala. Code 1975, §§ 12-12-50 through 12-12-55. *Page 597 
 The Statutory Provisions
The provisions of Ala. Code 1975, Chapter 7 of Title 15, §§15-7-1 through 15-7-4, govern the procedures for handling misdemeanor charges generally, but an entirely differentprocedure is required by the legislature when the offense is a "traffic infraction" and the charge is made by a law enforcement officer, and under Amendment 37 the legislature is empowered to decide how such offenses shall be prosecuted.
 Procedure for "Traffic Infraction"
The procedure for handling traffic infractions is contained in Ala. Code 1975, §§ 12-12-50 through 12-12-55, which provide, as follows:
"12-12-50. 'Traffic infraction' defined.
 "A 'traffic infraction' is any violation of a statute, ordinance or regulation relating to the operation or use of motor or other vehicles or the use of streets and highways by pedestrians.
 "12-12-51. District court jurisdiction of misdemeanor prosecutions for traffic infractions.
 "The district court shall have exclusive original jurisdiction of misdemeanor prosecutions for traffic infractions, except ordinance infractions prosecuted in municipal courts.
 "12-12-52. Receipt of guilty pleas in traffic infraction prosecutions by magistrates.
 "Pursuant to the provisions of section 12-17-251, magistrates may receive pleas of guilty in traffic infraction prosecutions, but may not receive pleas in matters involving:
"(1) Violations resulting in personal injury;
 "(2) Operation of a motor vehicle while intoxicated;
"(3) Reckless driving;
"(4) Felonies or indictable offenses;
 "(5) Operation of motor vehicles without an operator's license or while the license is suspended or revoked; or
 "(6) A defendant convicted of two or more previous traffic offenses in the preceding 12 months.
 "12-12-53. Requirement of use of uniform traffic ticket and complaint.
 "(a) Every law enforcement agency in the state shall use traffic citations of the form known as the uniform traffic ticket and complaint, which shall be substantially uniform throughout the state and which shall be issued in books with citations in no less than quadruplicate.
 "(b) The uniform traffic ticket and complaint shall be used in traffic cases where a complaint is made by a law enforcement officer or by any other person or an information is filed by the district attorney.
 "12-12-54. Designation of personnel responsible for accounting for uniform traffic tickets and complaints and proper disposition of forms; requirement of preparation of records and reports pertaining to uniform traffic tickets and complaints.
 "The judge or judges and the clerk of the district court shall designate personnel to be responsible for accounting for all uniform traffic tickets and complaints issued to law enforcement officers or others in his or their jurisdiction and for the proper disposition of the forms and shall cause to be prepared records and reports relating to the uniform traffic tickets and complaints in the manner and at the time as may be prescribed by rule of the supreme court.
 "12-12-55. Establishment of schedules of fines for traffic infractions; provision for manner of payment and accounting for of fines and costs.
 "Schedules of fines to be imposed for traffic infractions shall be established by law or rule.
 "The manner in which fines and costs shall be paid to and accounted for by personnel assigned to accept payment shall be provided by administrative rule."
As is readily apparent, § 12-12-53 requires that "every law enforcement agency" use the uniform traffic ticket and complaint, "which shall be substantially uniform throughout the state and which shall be issued in books with citations in no less than quadruplicate." (Emphasis added.) *Page 598 
Pursuant to this legislative provision, which requires the useof the uniform traffic ticket and complaint, this Court, under its rule-making power,[13] adopted Rule 19, Rules of Judicial Administration, effective April 1, 1977, which, among other things, sets out the actual content of the Uniform Traffic Ticket and Complaint. This form, of course, does include a space for a magistrate's verification,[14] and I make no point of that except to say that I believe the legislature could authorize the commencement of any misdemeanor case by an unverified complaint; therefore, I would have to disagree with any holding that every criminal proceeding must be begun by averified complaint. I need not discuss that issue in great detail, however, except to say I think that the legislature could authorize the prosecution of violations of the traffic laws by use of a "citation."[15] *Page 599 
Because of the strict requirements of the law for accountability for each ticket issued to a law enforcement agency,[16] there is little chance that an accused will not knowwhat he or she is charged with and the name of the complaining law enforcement officer, because the "traffic citation" is given to the motorist at the time of the arrest by the law enforcement officer making the arrest.
 Holloway and Brown I Apply
The Court finds that Holloway does not apply and basically adopts Brown's argument that because there appeared to be a proper signature on the ticket, Brown was not put on notice that it was affixed by the use of a rubber stamp,[17] but, to its credit, the majority refuses to accept Brown's "fraud" argument.
 A Class Action Cannot be Maintained
The complaint in this case, filed as a class action, is technically nothing more than a common law writ of error coram nobis,[18] and the office of this writ was set forth by the late Judge Aubrey M. Cates, Jr., in a scholarly opinion in Argo v.State, 43 Ala. App. 564, 195 So.2d 901, cert. denied, 280 Ala. 707, 195 So.2d 909, cert. denied, 389 U.S. 865, 88 S.Ct. 129,19 L.Ed.2d 136 (1967): *Page 600 
 "Under the Alabama concept of the remedy afforded by the writ of error coram nobis, the prisoner must plead and prove that he had a valid defense to the original charge of which he stands convicted. Ex parte Taylor, 249 Ala. 667, 32 So.2d 659; Ex parte Fewell, 261 Ala. 246, 73 So.2d 558; Ex parte Argo, 41 Ala. App. 442, 137 So.2d 775[755]; Ex parte Anderson, 41 Ala. App. 620, 147 So.2d 862; Woodard v. State, 42 Ala. App. 552, 171 So.2d 462
(hn. 5-8); Ex parte Davis, 43 Ala. App. 188, 185 So.2d 417; Freeland v. State, 43 Ala. App. 406, 191 So.2d 245 (hn. 7). See also Wiman v. Argo, 5 Cir., 308 F.2d 674, and Ard v. State, 42 Ala. App. 505, 169 So.2d 327.
 "After a trial where the verdict follows disputed testimony, a court reviewing by way of coram nobis starts with the original judgment standing as an evidentiary fact of adjudicated guilt. The prisoner bears the onus of overturning this product of the merger of law of the case with verdict-found fact.
 "Setting out, he burdens himself to adduce evidence — beyond a mere balancing of probabilities — which clearly and convincingly should satisfy the court that (a) the original judgment was tainted with fraud, actual or constructive, (b) there was no acquiescence by the defense therein, (c) a factual basis existed which if made known would prevent original judgment and (d) the failure to make this exonerating fact known earlier is not chargeable to the prisoner. Ex parte Rudolph, 276 Ala. 392, 162 So.2d 486; Allen v. State, 42 Ala. App. 9, 150 So.2d 399; Ex parte Jett, 42 Ala. App. 602, 172 So.2d 811.
 "Coram nobis would be reduced to a mere scholastic exercise if its office were to determine whether or not some procedural nicety even under an elastic claim of constitutional right was omitted at the original trial without showing that justice has miscarried. Moot courts are useful but their writs do not run to our prison wardens." (Emphasis added.)
During my research, I located the Callahan v. Wallace[19] case used by the majority in support of its opinion, and Callahan, a federal action under a civil rights statute, did permit a class action. I do not think Callahan is similar to this case, but even assuming that it is, I think the majority correctly uses it for the principles of law relating to repayment of fines, etc.
 Attorney Fees Should Not be Awarded
I now come to another very disturbing principle of law announced for the first time in this case — the right of a petitioner to recover attorney fees for his privately retained counsel.
While I do not question the power of this Court to award such fees, I do question how this litigation "resulted in a benefit to the general public." In Callahan v. Wallace, 466 F.2d 59
(5th Cir. 1972), cited in support of the award, there was the vindication of a constitutional right. It is my opinion that the release of Ex parte Dison by this Court is what really changed the procedures used by magistrates, not the filing of this suit. In fact, Ex parte Dison formed the basis for this suit; therefore, I cannot agree that counsel performed a great public service.
 Conclusion
While I do not agree that this suit should be allowed, I applaud the remedy given insofar as it refuses to set aside the convictions and return the fines. I also agree that our Rule 19, which sets out the form of a traffic ticket, should be verified. Although I question what additional validity the verification gives to the traffic charge, or what further notice a verification gives the defendant over and above what he or she was given by the copy of the ticket given to him or her at the time of arrest, I do agree that a UTTC should be verified. I have remained constant, however, in my opinion that the lack of a verification or an improper verification, is a waivable defect.
Based on the foregoing, I am of the opinion that the judgment of the trial court dismissing the complaint as to each defendant *Page 601 
should be affirmed; consequently, I must dissent.
[8] State v. Brown, 514 So.2d 836 (Ala. 1987).
[9] In Prince, the report of the case shows the following:
 "The defendant demurred to the indictment upon the ground that while it purported to be signed by Benjamin F. Elmore, it was not, as a matter of fact signed by him, but the name 'Benjamin F. Elmore' signed to said indictment was written by W.C. Harrison, Jr., and not by Benjamin F. Elmore. At the bottom of this demurrer there was the following statement, which was signed by the defendant's attorney: 'And the defendant pleads the above also in abatement to said indictment.' The demurrer was overruled, but the judgment entry does not show that the plea in abatement was passed upon."
The Court held:
 "It was not essential to the validity of the indictment that it should have been prepared or signed by the solicitor. It 'receives its legal efficacy from the finding and return of the grand jury; and the legal evidence of its verity is the return "A true bill," apparent upon some part of it bearing the signature of the foreman.' Holly [Holley] v. State, 75 Ala. 14; Joyner v. State, 78 Ala. 448. Assuming the efficacy of the demurrer interposed to raise this point, it was without merit. Of course, if it was abortive in this respect the same conclusion would follow. It also appears that the facts stated in the demurrer were, by the reference to it, pleaded in abatement, but this plea does not appear to have been brought to the attention of the court, nor was issue joined upon it, nor was any evidence introduced in support of it. We must, therefore, presume that it was abandoned."
[10] He who acts through another acts himself. Black's LawDictionary 1413 (4th ed. 1968).
[11] The Benson case, I feel, is especially applicable because it involved a situation in which the verifying signature of the foreman of the grand jury was affixed by the clerk to the phrase "a true bill." Benson held at least two things: 1) If the foreman authorized the clerk to sign the foreman's name, it was authentic enough not to void the indictment, and 2) defects in the indictment should be raised before trial rather than after conviction.
[12] An information is a charge presented by a public officer upon his oath of office. In Gunn v. City of Birmingham,402 So.2d 1122 (Ala.Cr.App. 1981), Judge Harris, writing for the court, explained the office of an information:
 "The term complaint, used in this sense, is synonymous with the term information, and is an economical, convenient, and speedy aid to the administration of justice which omits the necessity of a grand jury indictment. Ex parte State, 71 Ala. 371
(1882); see Black's Law Dictionary, 4th Edition Revised, 1968, Complaint, Information defined. The Constitution of Alabama of 1901, Art. I § 8, (amendment # 37), makes specific provisions for the omission of grand jury indictments in the prosecution and proceedings in certain well defined situations. Accordingly, Alabama cases have treated complaints of this nature much the same as if they were indictments and have applied the substantive laws of each interchangeably."
[13] Section 6.11, Amendment 328.
[14] There is nothing in the official minutes of the Court, insofar as I know, to indicate why the Administrative Office of Courts elected to require that traffic tickets be verified. At that time in other jurisdictions, there was increasing use of the "citation," the word used in § 12-12-53, as a means of providing notice to an accused in cases involving misdemeanor or traffic infractions.
Even though official Court records do not contain some of the correspondence surrounding the adoption of Rule 19, I have maintained an independent file in my office, and I include some of it for a better presentation of the point that I make in this dissent.
From time to time the form of the UTTC has been modified or changed by the Court. Rule 19 of the Rules of Judicial Administration adopted the form of the Uniform Traffic Ticket and Complaint, which, according to my records, was first tested in Pike County and was subsequently distributed for use statewide on April 1, 1977, the effective date of Rule 19.
Records in my office indicate that there has always been a space on the ticket for a verification of the charge; therefore, I make no point that Rule 19 does not require verification, only that a defective verification is a waivable defect and does not affect the validity of a conviction, if waived. My recollection concerning the verification requirement is that the Court elected to require verification of the traffic citations, but I am not aware of what efforts were made administratively to educate users of the tickets concerning the point in time at which verification should be made. Clearly, the copy of the ticket given to the offender is not verified, but the failure of an offender to appear as required by the ticket to answer the charge can result in a warrant of arrest being issued. The Dison decision, of course, was an impact decision, and my files indicate that the Administrative Office of Courts has, from time to time, provided administrative assistance in the form of a Uniform Traffic Ticket and Complaint Manual, which was last revised in July 1986, but I have no information concerning what instructions were given to personnel using the UTTC concerning the verification requirement. The latest revised manual contains specific instructions on the accountability of traffic tickets and sets out the offenses that can be charged by a traffic ticket and complaint, and the post-Dison manual contains instructions concerning the verification requirements imposed by that case.
My files also indicate that there was debate among members of the Court at the time concerning changing Rule 19 to apply in all cases involving misdemeanors, not just traffic offenses, but the Court did not adopt such a rule. Some jurisdictions have adopted such a rule and do not require that the arresting officer have the traffic ticket verified. My files indicate that former Chief Justice C.C. "Bo" Torbert, Jr., corresponded with Carl F. Bianchi, administrative director of the courts for the State of Idaho, and was advised that in Idaho, by court rule, "the citation may be used without a complaint to prosecute any misdemeanor." (Emphasis added.) Letter from Bianchi to Torbert, dated August 1, 1980.
[15] "Citation" is defined in Black's Law Dictionary 309 (4th ed. 1968), as follows:
 "A writ issued out of a court of competent jurisdiction, commanding a person therein named to appear on a day named and do something therein mentioned, or show cause why he should not. Proctor, Prac. Sheldon v. Sheldon, 100 N.J. Eq. 24, 134 A. 904, 907. An order or summons by which a defendant is directed or notified to appear. Adams v. Citizens Bank, 136 So. 107, 109, 17 La. App. 422; Burrage v. Hunt Production Co., Tex.Civ.App., 114 S.W.2d 1228, 1239. The act by which a person is so summoned or cited.
 "It is usually original process in any proceeding where used, and in such respect is analogous to a writ of capias or summons at law and subpoena in chancery. Gondas v. Gondas, 99 N.J. Eq. 473, 134 A. 615, 618.
 "As the act of the court through its proper officer commanding the appearance of defendant at the time and place named to answer to plaintiff's petition, it has the dignity of official character and weight of superior authority. Moran Oil Gas Co. v. Anderson, Tex.Civ.App., 223 S.W. 1031, 1032. It is used in this sense, in American law, in the practice upon writ of error from the United States supreme court, and in the proceedings of courts of probate in many of the states. Durfee v. Durfee, 293 Mass. 472, 200 N.E. 395, 397; Schwartz v. Lake, 109 La. 1081, 34 So. 96.
 "It is also the name of the process used in the English ecclesiastical, probate, and divorce courts to call the defendant or respondent before them. 3 Vl.Comm. 100; 3 Steph. Comm. 720. And in Scotch practice it is the calling of a party to an action done by an officer of the court under a proper warrant; the service of a writ or bill of summons. Paters. Comp."
[16] To prevent the improper issuance of traffic tickets, and to prevent a law enforcement officer or other person from tearing up a ticket, there are strict accountability requirements in the statutes and in Rule 19 for each and every Uniform Traffic Ticket and Complaint "issued to law enforcement officers." See § 12-12-54 and Rule 19(a)(5).
[17] Brown's actual argument in his brief is:
 "In City of Dothan v. Holloway, 501 So.2d 1136 (Ala. 1986), this Court held that the absence of a magistrate's signature upon a UTTC is a waivable defect, and in Brown I, supra, this Court followed Holloway to a conclusion that Sub-Class A (composed of defendants similar to Holloway) was similarly barred from recovery in this class action.
 "This appeal addresses a significantly smaller sub-class of defendants convicted in Montgomery County District Court only — defendants who were victims of a fraud upon the Montgomery County District Court which could not have been waived because it was concealed by a fraudulent act which purported to confer jurisdiction upon the court. It also returns the Court's attention to a narrow exception to its holdings in Holloway and Brown I, recognized in Cherry v. State, 491 So.2d 1003 (Ala. 1986), as applicable to 'wrongdoing or mischief' on the part of a person pretending to be a magistrate."
But even assuming that the ticket was required to be verified before it was accepted for filing and disposition, there is nothing in this record to show that a "fraud" was practiced on the court, and there is certainly nothing to support Brown's arguments in his brief that "[s]ubject matter jurisdiction was never obtained by the District Court of Montgomery County, Alabama," and that "[a] fraud apparent neither to the district court nor [to] the members of Sub-Class B prevented each member of this sub-class from having an opportunity to consider waiving the jurisdictional defect which was occasioned by forgery by a mysterious woman whom Jewel Ryals could identify only by her misdeed." Jewel Ryals, whose name is on the ticket as the officer before whom the ticket was verified, admitted in sworn testimony, which appears in the record, that before the decision of this Court in Dison a young lady in her officer used "my stamp to put my name on there." Of course, Brown's characterization in his brief of the testimony that there was a "forgery by a mysterious woman whom Jewel Ryals could identify only by her misdeed," is not a fair characterization of her testimony. The record shows that Ryals actually testified as follows:
"Q. How did you signature come to be affixed to this ticket?
"Mr. Maddox: Object, Your Honor.
 "The Court: Overruled. If she knows. If you don't know, you don't know. Do you know how it came to be affixed?
"The Witness: Oh, yes.
"The Court: Okay. Go ahead and answer.
 "The Witness: The young lady, uh — I was trying to think of who she is. Right there. (indicating) She uses my stamp to put my name on there."
Clearly, this testimony shows that Ryals knew the person she had authorized to put her name on the tickets.
[18] Temporary Rule 20, Alabama Rules of Criminal Procedure, which now controls all post-conviction proceedings, had not been adopted when this case was filed.
[19] 466 F.2d 59 (5th Cir. 1972).